A99A2292, A99A2293. COX v. EDELSON et al.; and vice versa.
(530 SE2d 250)

SMITH, Judge.

Gerald Cox filed suit against Hank and Sue Ann Edelson, alleging that the Edelsons knowingly made false statements that induced him to invest in their office furniture business to his detriment. The complaint, as amended, raised seven counts, including fraud, misrepresentation in several respects, breach of fiduciary duty, breach of contract, and violation of securities laws.[1] The Edelsons answered, denying liability. Cox sought summary judgment on Count 7, violation of Georgia's securities law. The Edelsons filed a cross-motion for partial summary judgment as to Count 7. The Edelsons later also moved for partial summary judgment on Cox's remaining claims.

In separate orders, the trial court denied Cox's motion for summary judgment and granted the Edelsons' motion for partial summary judgment as to Counts 6 (breach of contract) and 7 (violation of securities laws). In a third order, the court granted partial summary judgment to the Edelsons as to all Cox's remaining claims except Counts 1 and 3, dealing with claims of fraud and misrepresentation.

In the main appeal, Cox appeals the grant of summary judgment to the Edelsons on Count 7 of his complaint. In the cross-appeal, the Edelsons challenge the trial court's denial of summary judgment in their favor as to Counts 1 and 3 of Cox's complaint. We find that summary judgment in favor of the Edelsons on Count 7 of Cox's complaint was not warranted. We therefore reverse the judgment below in the main appeal. We find that the trial court properly denied summary judgment to the Edelsons as to Counts 1 and 3 of Cox's appeal, and we therefore affirm the judgment in the cross-appeal.

1. In the main appeal, Cox contends the trial court erred in granting summary judgment to the Edelsons on his claim that they violated the Georgia Securities Act of 1973, OCGA §§ 10-5-1 through 10-5-24. Cox argues that his investment in the Edelsons' corporation was a purchase of stock and that it triggered the protections and relief authorized under the Act. The trial court agreed with the Edelsons that Cox's investment in their business in this case did not meet

---

[1] The Edelsons' accountant was also sued, but she was later dismissed with prejudice.

the definition of a security. The court found that there must be an "infusion or investment of money or comparable tangible assets in a company with profits to come solely from the efforts of others." (Citation and punctuation omitted.) *Nicholson v. Harris*, 179 Ga. App. 35, 36 (345 SE2d 63) (1986). This was derived from the "economic reality" test outlined in *Securities & Exchange Comm. v. W. J. Howey Co.*, 328 U. S. 293 (66 SC 1100, 90 LE 1244) (1946) and applied by the Supreme Court of Georgia in *Tech Resources v. Estate of Hubbard*, 246 Ga. 583 (272 SE2d 314) (1980). The court concluded that "undisputed facts" established that Cox was not a passive investor but became a full-time employee of the Edelsons' business, managing its newly opened showroom and handling financial and administrative affairs for the company. The court therefore concluded that Cox's investment was not a security for purposes of the Act.

In *Cohen v. William Goldberg & Co.*, 262 Ga. 606 (423 SE2d 231) (1992), the Supreme Court of Georgia adopted a two-part test for determining whether a particular investment is a security, integrating the holdings of *Tech Resources* (the "economic reality" test) and another United States Supreme Court case, *Landreth Timber Co. v. Landreth*, 471 U. S. 681 (105 SC 2297, 85 LE2d 692) (1985) (the "stock characterization" test). Our Supreme Court determined that the initial test must be the "stock characterization" test. Only if it does *not* meet the requirements of that test must we apply the "economic reality" test. *Cohen*, supra at 608-609 (1); see *Bell v. Sasser*, 238 Ga. App. 843, 845 (520 SE2d 287) (1999).

We therefore begin our analysis with the "stock characterization" test. Under that test, if an instrument both is called a "stock" and bears the usual characteristics of a stock, a purchaser justifiably may assume that securities laws apply. *Cohen*, supra at 607 (1). The starting point is the language of the statute. Id. A security is defined in the Georgia Securities Act as:

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of indebtedness, investment certificate, certificate of interest or participation in any profit-sharing agreement, . . . transferable share, investment contract, voting-trust certificate, limited partnership interest, or beneficial interest in profits or earnings, or any other instrument commonly known as a security. . . .

OCGA § 10-5-2 (a) (26). Cox's investment was referred to as a stock purchase. But even when a stock is called that, we must determine whether it bears the usual characteristics of a "stock" before it is subject to the Act.

Those characteristics usually associated with common stock are (i) the right to receive dividends contingent upon an apportionment of profits; (ii) negotiability; (iii) the ability to be pledged or hypothecated; (iv) the conferring of voting rights in proportion to the number of shares owned; and (v) the capacity to appreciate in value.

*Cohen*, supra at 607-608 (1).

It would appear at first blush that Cox's investment does not meet the requirements of the "stock characterization" test. Unless exempt, investments qualifying as securities must be registered. OCGA § 10-5-5. In a subscription agreement and investment letter attached to the stock purchase agreement, Cox acknowledged that the shares were not registered and the company was under no obligation to register them or make application for any exemption to the Act. He agreed to restrictions severely limiting his right to sell or otherwise transfer or hypothecate the shares. Cox presented no evidence concerning the right to receive dividends, the distribution of voting rights, or any understanding that the stock could appreciate in value.

But in *Cohen*, supra, the Supreme Court found that neither restrictions on the negotiability of stock in a closely held corporation nor its unregistered status negated the stock's character as a security. Id. at 610 (2). This is true because restrictions on negotiability are "usual and customary" for closely held corporations, id. at 610-611 (2) (a), and both the federal and the Georgia securities laws "contemplate that stock may be a 'security' and yet be unregistered." Id. at 611 (2) (b).

Because Cox's investment meets the definition of a security, we need not apply the "economic reality" test, upon which the trial court based its ruling. *Cohen*, supra at 608-609 (1), 611 (3), n. 3. The investment meets the definition of a security, and the trial court erred in finding that it did not.

We are not persuaded by the Edelsons' attempt to characterize the trial court's grant of summary judgment as "right for any reason." They argue that summary judgment was proper on Count 7 either because Cox ratified any misrepresentations or waived his claim through lack of diligence in discovering them or because Cox failed properly to tender his stock certificates, as required by OCGA § 10-5-14. A grant of summary judgment must be affirmed if it is right for any reason unless it is apparent that the trial court relied upon an erroneous legal theory. *Porquez v. Washington*, 268 Ga. 649, 652 (3) (492 SE2d 665) (1997). But that principle has no application here. Ratification of the alleged misrepresentations and lack of diligence are issues that pertain to the fraud claim. They are not applicable to

the question of whether the claim of violation of the securities law is a viable one. As to the defense of failure to tender, that was not raised below. The grant of summary judgment to the Edelsons, which was based upon the sole stated ground that the stock was not a security, was therefore error and must be reversed.

2. In the cross-appeal, the Edelsons contend the trial court erred in denying their motion for summary judgment on Cox's claims for fraud and misrepresentation in Counts 1 and 3 of Cox's complaint. The trial court found that issues of material fact remained with regard to these two counts. A review of the record indicates the trial court was correct.

Five elements must be shown to recover on a claim of fraud; the plaintiff must show: a false representation; scienter; the intent to induce him to act or refrain from acting; justifiable reliance on his part; and damages. *T.O.H. Assoc. v. 2B Enterprises*, 224 Ga. App. 730 (482 SE2d 393) (1997). Cox's allegations in Counts 1 and 3 of the complaint were that to induce him to invest in their office furniture business, the Edelsons made a number of representations to him that they knew to be false and that he relied upon those representations to his damage.[2] On a motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that the undisputed facts warrant summary judgment in his favor when the evidence is construed most favorably toward the plaintiff. *Hall v. Cracker Barrel &c.*, 223 Ga. App. 88, 89 (1) (476 SE2d 789) (1996). If the evidence was not in conflict on each of these elements and the evidence demanded a verdict in the Edelsons' favor, they were entitled to summary judgment. But here, the evidence was clearly in conflict on numerous issues.

Cox alleged the Edelsons lied about the assets and liabilities of the corporation, listing on financial statements provided to him that the corporation owned certain vehicles, that the corporation owned a certain $8,500 investment, and that the Edelsons owed a debt to the corporation amounting to $19,800. Cox alleged that he later discovered that the corporation did not own the vehicles. After he began working for the corporation, he became aware that $10,000 of the amount listed as owed by the Edelsons to the corporation was written off, as was the $8,500 "investment," which Cox alleged actually had been worthless for years. The Edelsons also, he alleged, failed to disclose material facts, such as Hank Edelson's $50,000 debt to the Internal Revenue Service. He further alleged that Edelson made a payment of $10,000 from the corporation for what Edelson described

---

[2] Count 3 expressly alleges that the Edelsons made the false representation that their accountant was a Certified Public Accountant.

as a pre-existing loan to the corporation, when that loan had not been listed on the financial statements. He also alleged that Edelson misrepresented his prior business record and hid numerous business failures. Cox was fired from the business just months after he made his investment.

Edelson, on the other hand, asserted he never made any false misrepresentations to Cox. He stated that the only complete documents Cox reviewed before investing in the corporation were the company's May 1995 internal financial statements and its 1993 and 1994 income tax returns, both of which were prepared by the company's accountant in the normal course of business. He alleged that he was unfamiliar with these documents and had no background in financial matters, but he invited Cox to examine any documents pertaining to the corporation he wished. Cox did not take advantage of this invitation. Edelson denied telling Cox that the corporation owned the vehicles or that the company owned $8,500 in stock in another company. He maintained that he was not aware that the $8,500 investment was listed on the financial statements and that he never instructed the accountant to write the investment off as worthless. He claimed the accountant "set up" the balance sheet item listing loans to him and his wife as assets and he had "no meaningful understanding" of this. Edelson further claimed that he never represented that his accountant was a Certified Public Accountant, that he informed Cox that the corporation had financial difficulties in the past, and that he did not misrepresent his past business history.

The evidence is in conflict as to whether misrepresentations were made and, if made, whether they were knowing. It is also in conflict with regard to whether Cox was justified in relying upon any information given or whether he failed to use due diligence in exploring other information. The trial court therefore correctly denied the Edelsons' motion for summary judgment as to Counts 1 and 3 of Cox's complaint.

*Judgment affirmed in Case No. A99A2293. Judgment reversed in Case No. A99A2292. Pope, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 29, 2000 —
RECONSIDERATION DENIED MARCH 21, 2000 — 

*Tony Center*, for appellant.
*Friedman, Dever & Merlin, Douglas M. Robinson*, for appellees.