## A04A2359. PALMA v. GEORGIA FARM BUREAU INSURANCE COMPANY.

(606 SE2d 341)

BLACKBURN, Presiding Judge.

In this declaratory judgment action regarding entitlement to insurance coverage for personal injuries occurring during farming operations, Florencio Palma appeals the trial court's grant of summary judgment to Georgia Farm Bureau Insurance Company (the Bureau), contending that the trial court erred by determining that Palma was not an employee of Stanley Farms[1] covered by the policy in question. For the reasons set forth below, we affirm in part and reverse in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[2]

Viewed in this light, the record shows that Stanley Farms grows and harvests cucumbers and onions. On June 7, 2002, during the harvest in one of Stanley Farms' fields, Armando Cruz accidentally drove a truck over Palma's leg. Both Palma and Armando Cruz were field workers under the direct supervision of Oscar Cruz, Armando Cruz's brother and one of four supervisors hired by Stanley Farms to conduct and oversee the harvest.

Following the accident, Palma brought suit against Oscar Cruz, Armando Cruz, and Stanley Farms, seeking compensation for his injuries. In turn, the Bureau filed a separate declaratory judgment action to determine whether its insurance policy with Stanley Farms, which insures personal injuries suffered by Stanley Farms' employees, covered the accident.[3] The Bureau contended that it did not owe coverage because: (1) Oscar Cruz was an independent contractor and not a covered employee of Stanley Farms under the policy; and (2) Palma and Armando Cruz were employees of Oscar Cruz, not Stanley Farms.

---

[1] The owners of Stanley Farms are R. T. Stanley, Brian Stanley, and Tracy Stanley.

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] During the pendency of the declaratory judgment action, Palma's suit against the defendants was stayed.

After considering the evidence, the trial court granted the Bureau's motion for summary judgment. Palma now challenges this ruling, contending that questions of fact remain whether Oscar Cruz, Armando Cruz, and Palma were employees of Stanley Farms.

Although the legal conclusions regarding the employment status of Oscar Cruz, Armando Cruz, and Palma are strongly disputed, the facts on which this legal conclusion must be based are not.

The record shows that, in order to harvest its produce, Stanley Farms employs four supervisors, one of whom is Oscar Cruz. Each supervisor, acting independently and with his own resources, is expected to recruit his own workers to harvest the fields. For the 2002 growing season, Stanley Farms entered into a supervisor agreement with Oscar Cruz which states:

> Each supervisor will be responsible for keeping his workers in line with the Stanley Farms rules and regulations in the field. Each supervisor will make sure all supplies are available for each worker according to Dept. of Labor rules. Any worker that doesn't follow rules will be dismissed by the supervisor he works for. Stanley Farms will do each supervisor's payroll due to Department of Labor rules of making sure each worker is paid minimum wage and all tax deposits are made timely. Each supervisor is responsible for insuring his trucks and keeping them in good condition while in Stanley Farms fields. Stanley Farms is not responsible for any employees hired by supervisors.

Pursuant to this agreement, Oscar Cruz, who is registered with the Georgia Department of Labor as an independent farm labor contractor, hired approximately 40 resident alien workers to harvest Stanley Farms' fields under his supervision. After hiring a worker, Oscar Cruz filled out an IRS Form I-9, listing himself as the worker's employer. He then submitted this I-9 to Stanley Farms.

The record further shows that Oscar Cruz retained authority over the workers hired by him, including the unilateral right to both hire and fire them. The only direction which Stanley Farms gave Oscar Cruz with regard to his workers was telling him which fields would be ready to harvest on a given date, along with the agreement that the workers would not be allowed to break certain rules (e.g., drinking alcohol on the job).

Oscar Cruz's workers were paid by the number of baskets of produce harvested by them, and, each week, Oscar Cruz relayed this number to Stanley Farms for payroll processing. Oscar Cruz, himself, was paid a flat fee based on the weight of the overall product delivered by him to Stanley Farms. Using the information provided by Oscar

Cruz, Stanley Farms calculated the payment for each of Oscar Cruz's workers and cut a check for them. Stanley Farms then deducted this amount from its payment to Oscar Cruz. Oscar Cruz then delivered the checks to the workers.

Prior to 1998, Stanley Farms issued a single check to each of its supervisors and then allowed the supervisors to pay their workers. After 1998, however, Stanley Farms contends that it was advised by the Georgia Department of Labor that it would be preferable for Stanley Farms to deduct the workers' pay from that of the supervisors and issue individual checks to the workers. In that way, the Department of Labor could ensure that the supervisor was properly paying the workers in accordance with minimum wage legislation.

With regard to tax formalities, the record also shows that Stanley Farms issued Oscar Cruz a 1099 Form designed for independent contractors each year, and Cruz was responsible for withholding his own taxes. Oscar Cruz reported his 1099 earnings as business income. In addition, if Oscar Cruz did any other small tasks beyond his supervisor duties, Stanley Farms issued a W-2 to him. On his personal return, Cruz listed himself as self-employed.

With regard to the workers, as stated, Stanley Farms issued checks directly to them. As such, Stanley Farms also issued W-2s to the workers, on which Stanley Farms was listed as the workers' employer without qualification.

With regard to on-the-job expenses, Oscar Cruz was solely responsible for providing all tools needed by himself and his workers to harvest the crop. Oscar Cruz owned five trucks, and he kept his own insurance on these vehicles. In addition, Oscar Cruz provided the baskets his workers used to harvest.

Based on these undisputed facts, it must be determined whether: (1) Oscar Cruz is an independent contractor or an employee of Stanley Farms and (2) whether Palma is an employee of Oscar Cruz or Stanley Farms. We find that, although the trial court properly concluded that Oscar Cruz was an independent contractor of Stanley Farms, a question of fact remains regarding Palma's employment status.

With regard to Oscar Cruz,

[a]n employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer. OCGA § 51-2-4. In the absence of evidence of actual control, the test distinguishing an employee from an independent contractor is whether the employer assumed the right to control the time, manner and method of executing the work, as distinguished from the

right merely to require certain definite results in conformity to the contract.

(Punctuation omitted.) *Fortune v. Principal Financial Group.*[4] In other words,

> [w]e determine whether a person is an employee or an independent contractor by examining whether the employer has assumed the right to control the time, manner, and method of executing the work. The right to control the time means the employer has assumed the right to control the person's actual hours of work. The right to control the manner and method means the employer has assumed the right to tell the person how to perform all details of the job, including the tools he should use and the procedures he should follow.

(Footnotes omitted.) *Williamson v. Coastal Physician Svcs. of the Southeast.*[5]

Based on the undisputed facts of this case, Stanley Farms does not control the time, manner, and execution of Oscar Cruz's work to an extent that he could be considered an employee, rather than an independent contractor. Oscar Cruz hires his own workers, provides all tools to his workers, and sets his own hours. This autonomy indicates that he is an independent contractor, not an employee. And Palma's argument that Stanley Farms tells Oscar Cruz which fields to harvest on any given day does not alter this result. Prior to harvesting, Stanley Farms must prepare each field. For example, in the case of an onion harvest, Stanley Farms must first plow up the onions so Oscar Cruz and his workers can clip them from the rest of the plant. As such, it cannot be said that this practicality of the onion harvest converts Oscar Cruz from an independent contractor to an employee.

In addition, the fact that Stanley Farms issued Oscar Cruz a W-2 for small discrete tasks unrelated to his supervisor's duties does not convert him to an employee of Stanley Farms with regard to the harvesting duties at issue here. It is well settled that " 'a person can be an independent contractor in one part of his activity and an employee in another.' " *Moss v. Central of Ga. R. Co.*[6]

---

[4] *Fortune v. Principal Financial Group*, 219 Ga. App. 367, 368 (1) (465 SE2d 698) (1995).

[5] *Williamson v. Coastal Physician Svcs. of the Southeast*, 251 Ga. App. 667, 668 (554 SE2d 739) (2001).

[6] *Moss v. Central of Ga. R. Co.*, 135 Ga. App. 904, 906 (219 SE2d 593) (1975).

Accordingly, Oscar Cruz is an independent contractor of Stanley Farms for purposes of this case, and the trial court correctly found that the Bureau's policy does not extend to him.

With regard to Armando Cruz and Palma, however, the record shows that Stanley Farms voluntarily chose to issue W-2s to both Armando Cruz and Palma for their services performed *during the harvest*. On these W-2s, Stanley Farms listed itself as the workers' employer without reservation. While Stanley Farms contends that it followed this practice pursuant to recommendations by the Department of Labor, Stanley Farms' unqualified representation to the Internal Revenue Service that it was the workers' employer raises a question of fact and credibility regarding Palma's and Armando Cruz's employment status that only the trier of fact can determine. See, e.g., *Strozier v. Simmons U. S. A. Corp.*[7]

*Judgment affirmed in part and reversed in part. Barnes and Mikell, JJ., concur.*

DECIDED NOVEMBER 3, 2004.

*Jason A. Craig*, for appellant.

*Brown, Rountree & Stewart, George H. Rountree, Laura H. Wheaton*, for appellee.

---

[7] *Strozier v. Simmons U. S. A. Corp.*, 192 Ga. App. 601 (385 SE2d 677) (1989).