**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 21, 2025**

# In the Court of Appeals of Georgia

A25A0867. SCHRIVER et al v. NORTH FULTON EMERGENCY PHYSICIANS, LLC.

RICKMAN, Presiding Judge.

Brian Schriver was treated by a doctor in a hospital emergency room and died approximately 24 hours later. Schriver's wife filed suit against, inter alia, North Fulton Emergency Physicians ("NFEP"), which had supplied the emergency room doctor.[1] NFEP filed a motion for summary judgment on the ground that it cannot be held vicariously liable for the actions of the doctor because she was an independent contractor. The trial court granted NFEP's motion for summary judgment and Schriver's wife appeals. On appeal, Schriver's wife contends that the trial court erred

---

[1] Schriver's wife also filed suit against multiple other parties, including the doctor who treated her husband. NFEP is the only party subject to this appeal.

by granting summary judgment when genuine issues of material fact exist, making findings of fact and assigning weight to such facts at the summary judgment phase, and finding that there was a presumption that the doctor was an independent contractor based on the contract between the doctor and NFEP.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9–11–56(c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Pendley v. Southern Regional Health System*, 307 Ga. App. 82, 82 (704 SE2d 198) (2010).

As background, the expert affidavit from Schriver's wife indicated that on the evening of June 3, 2018, 43-year-old Schriver drove to the Wellstar North Fulton Hospital Emergency Department. Schriver complained of chest pain that began two days prior while he was exercising. Schriver explained that the pain had continued over the following two days and, at times, the pain was constant. While in the emergency room, Schriver was given aspirin and a "GI cocktail." The emergency room doctor who saw Schriver ultimately discharged him approximately two hours

2

after his arrival with a prescription for an acid-reducing medication. The following evening, Schriver collapsed while watching television at home with his family. Schriver's wife called 911, he was taken back to the same hospital, and, despite resuscitative measures, was pronounced dead approximately 24 hours after leaving the hospital the night before. The medical examiner conducted an autopsy and concluded that Schriver's cause of death was atherosclerotic coronary artery disease.

Schriver's wife filed suit against, inter alia, NFEP claiming that it was vicariously liable for the action of the doctor who treated and discharged Schriver the night before he died. NFEP moved for summary judgment, arguing that it could not be held liable for the doctor's actions because she was an independent contractor and not an employee. The trial court granted NFEP's motion in a detailed order. This appeal follows.

1. Schriver's wife contends that the trial court erred by granting summary judgment when genuine issues of material fact exist, and by making findings of fact and assigning weight to such facts at the summary judgment phase.

In Georgia, when considering whether a staffing company, like NFEP, can be vicariously liable for the actions of a physician, "[w]e determine whether a person is

an employee or an independent contractor by examining whether the employer has assumed the right to control the time, manner, and method of executing the work." *Williamson v. Coastal Physician Svcs. of the Southeast*, 251 Ga. App. 667, 668 (554 SE2d 739) (2001). "The right to control the time means the employer has assumed the right to control the person's actual hours of work." Id. "The right to control the manner and method means the employer has assumed the right to tell the person how to perform all details of the job, including the tools he should use and the procedures he should follow." Id.

The analysis is different when considering whether a physician is an employee or an independent contractor of a hospital. That analysis is currently controlled by statute. OCGA § 51-2-5.1 (f) and (g) provide that the language of the contract between the hospital and physician controls and, where a contract is absent, unclear or ambiguous, several factors are outlined to determine if a physician is an employee of a hospital.[2] By its plain language, OCGA § 51-2-5.1 *only* applies in the hospital-health care professional context. See OCGA § 51-2-5.1 (b). Prior to the adoption of that statute, this Court in *Lee v. Satilla Health Svcs.*, 220 Ga. App. 885 (470 SE2d 461)

4

(1996), outlined a series of factors to help make that determination. In *Cooper v. Binion,* 266 Ga. App. 709 (598 SE2d 6) (2004), this Court applied the factors set forth in *Lee*, along with other factors, to again determine whether a physician was an employee in the hospital-physician context.[3]

*Lee* and *Cooper* were superseded by OCGA § 51-2-5.1 (f) and (g). See *Blackmon v. Tenet Healthsystem Spalding*, 288 Ga. App. 137, 139 (1) n. 7 (653 SE2d 333) (2007), vacated in part on other grounds by *Blackmon v. Tenet Healthsystem Spaulding*, 294 Ga. App. 423 (669 SE2d 237) (2008) ("We note that in 2005, the Georgia legislature enacted OCGA § 51–2–5.1 (f) and (g), which effectively superseded *Lee* and *Cooper* by allowing the language of the contract to control and, where a contract was absent, unclear or ambiguous, by announcing new factors and by eliminating many of the old 11 factors in making this determination."). Schriver's wife, however, relied on the *Lee* and *Cooper* factors in the trial court and this Court to claim that issues of material fact

---

[3] The factors were: the right to direct the physician's work step-by-step; contracts to perform a service rather than accomplish a task; the right of the hospital to inspect the physician's work; the supplier of the equipment; the nature or skill of the physician's work; the hospital's right to control the physician's time; the method of payment; right to choose which patients to treat; physician spends all working hours at the hospital; the method of billing the patients; and payments for medical malpractice insurance. *Cooper*, 266 Ga. App. at 710-713 (1).

exist as to whether NFEP was liable for the doctor's actions. Prior to granting summary judgment in favor of NFEP, the trial court throughly discussed each *Lee* and *Cooper* factor as part of its determination that the doctor was an independent contractor rather than an employee of NFEP. While we find that the *Lee* and *Cooper* factors do not control the analysis as to whether NFEP was vicariously liable for the doctor's actions because those cases have been superceded by statute, we are reminded that "if it is not apparent that the trial court relied on an erroneous legal theory, its grant of summary judgment is to be affirmed if it is right for any reason." (Citation and punctuation omitted) *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002).

The contract between the doctor and NFEP is titled "Physician Independent Contractor Agreement." That contract expressly provides that

> this Agreement constitutes an independent contractor relationship between [NFEP] and [the doctor]. [NFEP does not control [the doctor's] time, method, and/or manner of his/her treatment of patients. [The doctor] is an independent contractor with [NFEP]. [The doctor] is not an employee of [NFEP]

Because the contract clearly states that the doctor is an independent contractor, that relationship is presumed to be true unless the evidence shows that NFEP has assumed the right to control the time, manner, and method of executing the work. See *Miller v. Polk*, 363 Ga. App. 771, 775-776 (1) (872 SE2d 754) (2022) ("Where, as here, "the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed the right to control the time, manner and method of executing the work.") (citation and punctuation omitted.).

In regards to the right of NFEP to control the doctor's time, manner, and method of executing her work, the contract provides that,

> [i]t is further understood that [NFEP] shall neither have, nor exercise any control or direction over, the methods by which the [doctor] agrees to perform the [doctor's] said work and professional functions. [NFEP] shall neither have, nor set standards for the duration or time under which [the doctor] performs [the doctor]'s work and professional functions.

A corporate representative for NFEP deposed that NFEP does not "dictate in any way how the doctors exercise the privileges of their medical license." The corporate representative further deposed that "under no circumstances does [NFEP]

7

claim the right or exercise a right to control the physician's independent medical judgment about how a particular patient is treated." The doctor deposed that she agreed to work six to eight shifts a month at the hospital. The contract provided that, "if needed, [the doctor] may be requested to work as many as two shifts per month more than the [doctor's] requested number of shifts." NFEP's corporate representative described the scheduling process as "the doctors could create the schedule by submitting their available dates or their blackout dates when they're not available. . . . Some software fill[s] the schedule, and if they have unfilled shifts it's [the medical director]'s responsibility to try to encourage the physicians to work it out . . . [or] he's got to work it or else they have to hire . . . a locum tenens physician."

This case is very similar to the facts of *Williamson*. In *Williamson*, a physician entered into an "Independent Contractor (Physician) Agreement" with a staffing company which provided the physician to a hospital's emergency room. *Willamson*, 251 Ga. App. at 669. In *Williamson*, the contract at issue specifically provided that the physician "shall notify" the staffing company "of the days and hours that he is available to work in the emergency room," and that the staffing company "will schedule him to work based on his notification of availability." Id. Additionally,

similarly to the contract in this case, the agreement provided that the doctor "shall act as an independent contractor practicing his profession of medicine," and that the staffing company "shall have no control over the manner or method by which he performs his professional medical practice." Id. This Court held that the trial court correctly concluded that the physician was an independent contractor because the evidence "unquestionably" showed that the staffing company "did not control the time, manner, or method" of the physician's work. Id. at 670.

Here, like in *Williamson*, the evidence shows that NFEP had no control over the time, manner, and method of how the doctor performed her work. See *Williamson*, 251 Ga. App. at 670. The doctor's contract with NFEP states that NFEP has no control over the methods by which the doctor performed her work. The NFEP corporate representative deposed that it did not have the right to control the doctor's exercise of her professional judgment and that, under no circumstances, did NFEP have any right to direct or control how a particular patient was treated. There is no evidence that NFEP controlled the method or manner in which the doctor performed her job.

In regards to time, the doctor deposed that she agreed to work six to eight shifts a month at the hospital. While, the contract provided that the doctor "may" be

9

"requested" to work extra shifts, that is not sufficient to prove that NFEP had assumed the right to control the doctor's hours of work. The evidence showed that the doctor submitted her available dates and blackout dates to NFEP for scheduling purposes. Additionally, the NFEP corporate representative deposed that if any shifts went unfulfilled, the medical director encouraged the doctors to work it out amongst themselves and, if an agreement was not reached, the medical director worked the shift or hired a locum tenens physician. Accordingly, the contract and the deposition testimony establish that NFEP did not retain a right to control the doctor's time. See *Williamson*, 251 Ga. App. at 670 ("[Staffing company]'s scheduling responsibility does not contradict the affidavit of [the physician] or the independent contractor agreement between him and [staffing company], both of which unequivocally prove that he controls his time by telling [staffing company] when he can be scheduled for emergency room work.").

Because it is clear that NFEP did not control the time, manner, and method of the doctor's work, the trial court correctly concluded that the doctor was an independent contractor and that NFEP cannot be held liable for her acts. See *Williamson*, 251 Ga. App. at 670 (holding that a staffing company was not vicariously

liable for the actions of a physician when the evidence showed that the staffing company did not assume the right to control the time, manner, or method of executing the physician's work); *Epps v. Gwinnett County*, 231 Ga. App. 664, 668 (4) (499 SE2d 657) (1998) (where this Court held that a prison health services company was not vicariously liable for the actions of a physician because it did not control the time, manner, or method in which the physician practiced medicine).

Schriver's wife further argues that the trial court erred by making improper factual findings at the summary judgment phase when it was analyzing the *Lee* and *Cooper* factors. Because we are holding that the *Lee* and *Cooper* factors do not control our analysis and we are holding that based on the contract and the evidence there is no genuine issue of material fact regarding whether NFEP controlled the time, manner, or method of the doctor's work, this claim has no merit.

2. Schriver's wife contends that the trial court erred by finding that there was a presumption that the doctor was an independent contractor based on the contract between the doctor and NFEP.

Specifically, Schriver's wife argues that the trial court erred by relying on a statement from *Miller*, 363 Ga. App. at 775-776 (1) that "[w]here, as here, the contract

of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed the right to control the time, manner and method of executing the work." (citation and punctuation omitted). Schriver's wife contends that the language cited in *Miller* mirrors that of OCGA § 52-2-5.1 (f), which she argues is irrelevant to this case because it pertains exclusively to hospital-physician relationships, as previously discussed.

Georgia common law has long established a rebuttable presumption that if a contract designates a party as an independent contractor, it is presumed to be true. This presumption exists separately and independently of any statutory basis. See *McGuire v. Ford Motor Credit Co.*, 162 Ga. App. 312, 313 (290 SE2d 487) (1982) ("Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control.") See also *Grange Indem. Ins. Co. v. Beavex*, 342 Ga. App. 601, 602 (804 SE2d 173) (2017); *Larmon v. CCR Enterprises*, 285 Ga. App. 594, 595 (647 SE2d 306) (2007). Therefore, the common law rebuttable presumption is applicable to the facts of this case regardless of whether that directive

is also codified in OCGA § 51-2-5.1 (f). Accordingly, we affirm the trial court's grant of summary judgment to NFEP. See *Williamson*, 251 Ga. App. at 670.

*Judgment affirmed. Gobeil and Davis, JJ., concur.*